| Form **843** (Rev. February 2008) Department of the Treasury Internal Revenue Service | **Claim for Refund and Request for Abatement** ▶ See separate instructions. | OMB No. 1545-0024 2003 |
|---|---|---|

Use Form 843 if your claim or request involves:
- (a) a refund of one of the taxes (other than income taxes) shown on line 3,
- (b) an abatement of employment or certain excise taxes, or
- (c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:
- (a) an overpayment of income taxes (use the appropriate amended income tax return),
- (b) a refund of excise taxes based on the nontaxable use or sale of fuels, or
- (c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s) Samuel R Congdon | Your social security number ●●●-●●-1547 |
|---|---|
| Address (number, street, and room or suite no.) 2905 Knollwood | Spouse's social security number |
| City or town, state, and ZIP code Plano, TX 75075 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number 469-341-3437 |

**1 Period.** Prepare a separate Form 843 for each tax period
From 1/1/2003 to 12/31/2003

**2 Amount to be refunded or abated** $ $11,811.20

**3 Type of tax.** Indicate the type of tax to be refunded or abated or to which the interest, penalty, or addition to tax is related.
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise (see instructions)  ☐ Income

**4 Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section: 6038

**5 a Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)
☐ Interest was assessed as a result of IRS errors or delays.
☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.
☒ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Dates of payment ▶ 2/3/2009 - $11,700.07 & 1/08/07 - $100

**6 Original return.** Indicate the type of return filed to which the tax, interest, penalty, or addition to tax relates.
☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945
☐ 990-PF  ☐ 1040  ☐ 1120  ☐ 4720  ☒ Other (specify) ▶ 5471

**7 Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Reasonable cause exists for the failure to file a complete return. See attached June 23, 2008 letter to Appeals Office.

This claim also requests an abatement of all statutory additions associated with this penalty.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

_Samuel R Congdon_ _____  2/16/2009
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)  Date

_____
Signature (spouse, if joint return)  Date

| **Paid Preparer's** | Preparer's Signature ▶ | Date 2/16/2009 | Check if self-employed ☒ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or if self-employed), address, and ZIP code | A. James Lynn, JD, CPA 6820 Walling Lane, Dallas, Texas 75231 | EIN | Phone no. 214-341-0000 |

EXHIBIT B

Paperwork Reduction Act Notice, see separate instructions.  Form **843** (Rev. 02-2008)

A. James Lynn
Attorney & Counselor at Law
6820 Walling Lane
Dallas, Texas 75231
214-341-0000
214-341-4907 (fax)

June 23, 2008

<u>Via Courier</u>

Ms. Deborah Glover
Internal Revenue Service
Appeals Office
4050 Alpha Road
Suite 517, MC:8000NDAL
Dallas, Texas 75244

RE: Sam Congdon [████1547]
     Abatement of Penalty assessed under IRC 6679
     Calendar year: 2002, 2003, & 2004

Dear Ms. Glover:

This communication, as well as the attached affidavit, constitute taxpayer's request for abatement of the $30,000 in penalties relating to the Service's contention that Samuel Congdon (the "taxpayer) failed to file a complete return (form 5471) for calendar years 2002, 2003, 2004, on behalf of Equity Development Group, Inc. ("EDG").

If the return was not required to be filed, the penalty must be abated or if the failure to file or provide the required information is due to reasonable cause, the penalty does not apply. *IRC § 6679(a); Regs § 301.6679-1(a)(2)*. To claim a reasonable cause exception, the taxpayer must set forth the facts on which he relies in a written statement, signed under penalties of perjury. *Regs. § 1.6038-2(k)(3); Regs § 301.6679-1(a)(3)*. Regulations under IRC § 6679 provide that, for purposes

Licensed to practice in all state courts in Texas & Oklahoma, 5th & 10th Federal Circuit Courts of Appeal, U.S. Tax Court
All federal districts in Texas & Western District in Oklahoma

Page 1 of 13

of filing under §6046 and § 6046A. Reasonable cause requires the taxpayer to exercise ordinary business care and prudence. A taxpayer who exercises such care and is nevertheless unable to comply is not subject to the penalty. *Regs. § 301.6679-1(a)(3).*

In some penalty cases dealing with reasonable cause, the taxpayer may also be required to demonstrate he acted in good faith or that there is an absence of willful neglect. Good faith refers to an honest belief, without any knowledge of circumstances that would put the taxpayer under a duty to inquire further, and free of any intention to defraud. Willful neglect, on the other hand, is defined as a conscious, intention failure or reckless indifference. *U.S. v. Boyle*, 469 U.S. 241 (1985). IRC § 6038 "reasonable cause" provision does not include this additional requirement that the taxpayer provide evidence that he acted in good faith or his failure to comply with the law was not due to willful neglect.

While failure to file a form 5471 information return generates penalties under IRC § 6038, which may be abated for "reasonable cause". Section 6038 does not include a provision defining "reasonable cause". In fact neither the statute, nor the regulations under section 6038, defines "reasonable cause". *Private Letter Ruling 200748006*; which then makes it a question to be decided by the courts. The Internal Revenue Manual as well as other analogous regulations (e.g. *301.6651-1(c)* do suggest standards for evaluating "reasonable cause", *IRM 20.1.1.3.1.2(d)*, however the ultimate trier of fact as to "reasonable cause" is not the Internal Revenue Service, rather it is the court.

In any court proceeding involving a civil penalty of an individual, the Internal Revenue Service has the burden of producing evidence to support the imposition of a penalty before a court can impose it. IRC § 7491(c). Whether the elements that constitute reasonable cause are present

Licensed to practice in all state courts in Texas & Oklahoma, 5th & 10th Federal Circuit Courts of Appeal, U.S. Tax Court
All federal districts in Texas & Western District in Oklahoma

Page 2 of 13

is a question of fact to be decided by the jury. The burden of producing evidence to support any defense to a penalty is on the taxpayer. *Hoefle v. Commissioner*, 114 F.2d 713 (6th Cir. 1940); *Sabatini v. Commissioner*, 98 F.2d 753 (2nd Cir. 1938).

## Starting Point in Our Analysis

The starting point in this case before the hearing officer if for a determining if a form 5471 and any supporting schedules are required to be filed, and if so, which forms, are the instructions promulgated by the Internal Revenue Service. The instructions today are slightly different from those in effect in 2001, 2002, & 2003, and **Exhibit A** are two pages of the instructions during this time period.

## Category Determines Filing Requirement & Applicable Exception

Surprisingly, the starting point for determining which schedules and forms to file is not the regulations, but rather the instructions to the form. Specifically the regulations state"

> "(f) CONTENTS OF RETURN. The return on Form 5471 shall contain so much of the following information, and in such form or manner, **as the form shall prescribe** with respect to each foreign corporation:" *Regs. § 1.6038-2(f)*. [emphasis added]

The instructions list five categories of filers, and based upon the appropriate category, the instructions provide the applicable schedules to be prepared. A Category 1 filer is a U.S. person who is an officer, director or 10% shareholder of a foreign personal holding company. I do not believe EDG was a foreign personal holding company and thus this category is not applicable. Category 2 is a U.S. citizen who is an officer or director of a foreign corporation and has since the last time a 5471 was filed. This category is not applicable since there were no changes of stock ownership during the relevant time periods under examination to the 5471 filed for 2000. A Category 3 filer is a U.S. person (need not be an officer, director) who acquires 5% or more in value

Licensed to practice in all state courts in Texas & Oklahoma, 5th & 10th Federal Circuit Courts of Appeal, U.S. Tax Court
All federal districts in Texas & Western District in Oklahoma

Page 3 of 13

of the corporations's stock in the current year, since the last time a 5471 was filed, or owns a 5% or more interest in the foreign corporation which has become a control foreign corporation in the current year. Again, that is not applicable in our case. A Category 4 filer is a U.S. person who had control of a foreign corporation for an uninterrupted period of at least 30 days during the annual account period of the foreign corporation. Control is defined as having over 50% control of the voting power, and certainly Mr. Congdon does appear to fit this category. However please read the following exception:

> "Exception. A U.S. person is **not required** to file for a corporation defined in section 1504(d) that files a consolidated return for the tax year."[1] [emphasis added]

IRC § 1504(d) discusses a subsidiary formed to comply with foreign law, which fits our fact situation. Specifically, EDG was a foreign subsidiary of Barringer Financial. Barringer Financial was one of the taxpayer's entities which was examined by Mr. Hoagland and "NO CHANGED". All of the activity (income, expenses) of EDG was consolidated into Barringer Financial which is why there was not a change to the taxable income of Barringer Financial. If this consolidation was improper, there would have been an adjustment made to the Barringer Financial return, there was none, and certainly it is reasonable to conclude Mr. Hoagland was competent to perform his job, and specifically this examination.[2] Based upon this exception, a 5471 was not required to be filed for the foreign corporation and therefore there is no basis in the law for the assessment of the penalty under IRC § 6679.

Category 5 deals with a U.S. shareholder who owns a 10% or greater interest in the foreign

---

[1] This exception is also found in the 2006 instructions for form 5471.

[2] You may verify this consolidation with Mr. Hoagland or security his work papers and verify yourself.

corporation for a thirty day period of time. This requirement is almost identical to a Category 4 Filer, and does appear to include Mr. Congdon. However, Mr. Congdon would not file the 5471 as a Category 5 filer since **he is exempt from filing under the Category 4 rules**.

### Reasonable Cause

Assuming the Internal Revenue Service might take issue to the clear exception provided for in its instructions and that the 5471 was required, the Hearing Officer the penalty was assessed since the return did not include a Schedule M, and since, pursuant to the instructions, a Schedule M is only required for one category, the taxpayer must be therefore is a Category 4 filer.[3] The instructions to the 5471 (2006) [**See Exhibit B**] provide that a Category 4 filer will incur the following hours on this form:

| | |
|---|---|
| Record keeping | 168.25 |
| Learning about the law | 18.25[4] |
| Preparing and sending the form to the IRS | <u>26.75</u> |
| Total | <u>213.25</u> |

By comparison, page 41 of the instructions for form 1040 for 2006 reflects that the average time for an individual income tax return for all taxpayers is 24.2 hours. If one assumes the amount of time spent on a return is relevant to its complexity, which is a logical inference, the 5471 is nearly 9 times as complex. The trier of fact should consider that whether or not the reasonable cause exception has been met should be based upon the complexity of the return (nine times greater than

---

[3] Only a Category 4 filer is required to file a Schedule M.

[4] The undersigned attorney has spent over 500 hours in continuing education courses and outside study in achieving some basic understanding of form 5471 and Subpart F of the Internal Revenue Code. To believe a law person, without an accounting or legal background, could achieve this same feat in 18 hours is unrealistic and very unflattering to tax professionals.

a 1040) and the knowledge, sophistication, etc. of the taxpayer.

### Reasonable Belief

The taxpayer reasonably believed that he was not required to file form 5471, however some doubt was in his mind. To be diligent, he nevertheless studied the requirements, and to be on the safe side, filed the basic form without Schedule M., with the belief that if he was mistaken, the filing would go to negate any willful misconduct on his part.[5]

Additionally, taxpayer engaged Mr. Lyle J. Mortensen, a certified public accountant and person who represented himself as having knowledge in foreign taxation, to prepare the Barringer return. Taxpayer provided Mr. Mortensen the detailed general ledger which included the foreign transactions each year and on several occusasions discussed EDG with Mr. Mortensen. Taxpayer relied upon Mr. Mortensen's advice. Mr. Mortensen retired in 2004 and was not available for consultation during the examination.

The courts on numerous occasions have said that a taxpayer's sophistication with respect to tax laws, **at the time the return was filed, is relevant** in deciding whether the taxpayer acted with reasonable cause. See *Keevs. v. Commissioner*, T.C. Memo, 1999-41; *Spears v. Commissioner*, T.C. Memo, 1996-341, aff'd, 98-1 USTC, ¶ 50, 108 (2nd Cir. 1997). Mr. Congdon was and is not a tax expert, he does not advertise himself as a tax expert, he does not give tax advice and has no training or education in federal tax law. He is not an accountant or lawyer. Treasury Regulations, which are consistent with the courts, provide that "reasonable cause" includes an honest misunderstanding of fact or law, which may be inferred from the knowledge and sophistication of the taxpayer. *Regs. § 1.666404(b)(1)*. Prior to Mr. Congdon filing the 5471s, no one gave him

---

[5]A person desiring to hide transactions would not file the form 5471 then include all the transactions in the domestic return.

advice the returns might contain errors. Mr. Congdon is guilty of nothing more than attempting to file his own return, no different that a homeowner repairing his plumbing. And when he discovered that a different interpretation might exist for the instructions, he promptly hired different professional counsel to assist him and comply with the IRS agent's request.

## Ignorance of the Law

Ignorance of the law, in and of itself, does not constitute reasonable cause. However, ignorance of the law in conjunction with other facts and circumstances, including the taxpayer's knowledge, may support a claim of reasonable cause to abate a penalty. *IRM 20.1.1.3.1.2.1 (8-20-98)*. For way of illustration and not limitation, where the Internal Revenue Service has not provided any guidance as to difficult and complete issues, reasonable cause may exist for a position taken in good faith. Similarly, a taxpayer may have reasonable cause if the failure is a result of a recent change in the tax law or forms of which the taxpayer could not be reasonably be expected to know. *Id.* There is no more difficult provisions in the law, except perhaps welfare benefit plans, and there exists substantial less authorative resources and plan language editorials in the foreign tax area than in benefit plans.

Ignorance of the law is not, nor is it being argued, a bar to enforcement of the requirement that the taxpayer file a complete return, it merely finds that ignorance can constitute reasonable cause for the abatement of a penalty associated with the filing of a return when the area of the law is very complex and there is little or no guidance.

As previously pointed out, the complexity of preparing and filing the 5471 is nine time more complex and difficult than the average individual income tax return. The Internal Revenue Code and associated regulations dealing with foreign transactions are perhaps the most difficult in the Code. Yet, after a diligent search and as previously noted, there are no statutes or regulations which

Page 7 of 13

define what forms a U.S. person is to prepare and file. It appears the sole authority are the instructions to the form which defines what a category 1, 2, 3, 4, and 5 Filer are and which forms each Filer is required to file. If some ambiguity exists, the answer may not be found in the statutes enacted by Congress or any regulations issued by the Treasury Department, but rather in the instructions drafted by the Treasury Department.

As previously stated, the taxpayer is not an attorney, certified public accountant, or tax advisor. He is not trained in tax law issues, rather relies upon his knowledge and logic to prepare returns. Until the examination of Barringer Financial, he had no reason to believe the 5471s were prepared incorrectly, and in fact today, it appears the 5471s were not required. His sole basis for preparation of the returns were the instructions to form 5471. He diligently read the instructions and prepare the return based upon his interpretation thereof. There are no authority secondary sources to verify his interpretation, there were no tax professional who informed him his position was incorrect (and it may not be) including the CPA who prepared Barringer Financial's return which the 5471 was attached to. There was no willful neglect for each and every transaction of the EDG was included in the books, records, and tax return of Barringer Financial, and he filed the Report of Foreign Bank Account (form TD F 90-22.1) for each foreign bank account with the Internal Revenue Service. There was no intent to defraud the government.

<u>Erroneous Reported Transaction Reflected in Taxable Income</u>

The Internal Revenue Service did consider reasonable cause, in a private letter ruling, relating to over and under reporting on a 5472 (similar to 5471) in which the reporting items would be off by more than $50,000. *Private Letter Ruling 200429007*.[6] The Service stated "A variety of

---

[6] It appears the Service did not reach a conclusion if reasonable cause existed. See the Conclusion section of the letter ruling.

facts may indicate reasonable cause, such as 'an honest misunderstanding of fact or law that is reasonable in light of the experience and knowledge of the taxpayer' or 'reliance upon the advice of a professional' if the 'reliance was reasonable' under the circumstances." Regs. § 1.6038A-4(b)(2)(iii)." *Id.* Additionally, in the letter ruling, one of the factors the Service pointed to in determining reasonable cause is "Whether the erroneous reported transactions(s) is (are) reflected in the determination and computation of the reporting corporation's taxable income." *Id.* It is undisputed that all the transactions of EDG were reported in Barringer Financial books, records, and income tax return, and the appropriate tax liability had been computed and paid. This can by verified by the Internal Revenue Service's records as well as the Revenue Agent's Report I have previously provided which the Hearing Officer is in possession.

## Compliance History

Another one of the factors the Internal Revenue Service considers in making a determination of "reasonable cause" is the compliance history of the taxpayer. It is undisputed that the taxpayer has a long history of filing the required tax returns or forms. Furthermore, even in light of the current controversy, there is substantiative law (discussed herein) that a 5471 is not required which continues to demonstrate 100% compliance.

## Schedule M

Schedule M., *Transactions between Controlled Foreign Corporation and Shareholder or Other Related Persons*, which is the document on which constitutes the basis for assessing the penalty, is a form which discloses transactions between the CFC (control foreign corporation) and the US person which are not ordinarily disclosed in a filing with the Internal Revenue Service. This form is not like a K-1 from a partnership or S corporation which reflects the taxable income the shareholder must pick up in his individual return, rather it details other items not normally

associated or included in a US income tax return. Any income imputed to the shareholder of a foreign corporation is not derived from the Schedule M and does not contain any income items to the shareholder. For the three years in question, the following information is reflected in the supplemental 5471 filings during Mr. Hoagland's examination, which were not included in the original filing:[7]

|  | 2004 | 2003 | 2002 |
|---|---|---|---|
| Dividends[8] | 46,685. | 11,221. | 13,870. |
| Amount borrowed | 100. | 37,603. | 37,603 |
| Amount loaned | 13,771. | 3,540. | 0. |

This information might be useful when reviewing the transactions between a foreign subsidiary and it's U.S. parent, since there may be issues of transfer pricing, income which might be reportable in the U.S. parent, etc., however these inter-company transactions **are irrelevant** when the **foreign corporation's transactions have been consolidated with the U.S. parent**, since all the transactions have been reported in the same return. In fact, if you will examine the instructions to the 5471 [see Exhibit A], you will note that a foreign corporation that files a U.S. return is not required to file the 5471 or the schedules thereto, the theory being all the transactions of the foreign corporation are included on a return filed with the Internal Revenue Service. Again, there is no dispute that all EDG's transactions were included in Barringer Financial's return and thus EDG filed a US return with Barringer Financial. If the Service disagrees that a consolidated return was not filed, the Mr. Hoagland, the revenue agent, should have made an adjustment during the examination

---

[7] Assuming the 5471 is required to be filed.

[8] These dividends represent disbursements of monies to the shareholder, however, like a partnership, the shareholder pays tax on the income from the foreign corporation, not the distributions to him from the foreign corporation.

for the return would be incorrect.

## Conclusion

Neither the Internal Revenue Code or the Regulations define the filing requirements of a controlled foreign corporation, nor do they specify what constitutes "reasonable cause" for the failure to file a complete return. The primary source appears to be the instructions to form 5471, which to say the least, for the complexity of the law involved, are abbreviated and ambiguous.

While the Internal Revenue Service was given the authority to determine the required disclosure for a controlled foreign corporation and penalties for the failure to file a return, Congress mandated the Internal Revenue Service would waive the penalty in the presence of "reasonable cause". The Internal Revenue Service is not the final authority as what constitutes "reasonable cause", a panel of 12 jurors are since "reasonable cause" is a question of fact.

However, before deciding "reasonable cause", the hearing officer first must ascertain if the 5471 was required. If the hearing officer concludes the transactions of EDG were properly consolidated into the tax return of Barringer Financial, the hearing officer must conclude a 5471 was not required for EDG, and therefore the assessed penalty is improper is must be abated. Any decision to the contrary is inconsistent to the Revenue Agent's report.

If the hearing officer concludes there was not a consolidation, which clearly ignores the clear meaning of the Internal Revenue Code, then the hearing officer must examine if the facts contained herein, as well as in the attached affidavit, constitute "reasonable cause" which then would require abatement of the penalties. There is no bright line test, each case must be decided upon the facts and circumstances before the trier of fact. As was provided by the hearing officer, the penalty was assessed by the Revenue Agent because the taxpayer did not file a Schedule Mr. Clearly the instructions provide that only in the case of a Category 4 filer would a Schedule M be required, so

the Revenue Agent must have made that determination. The Revenue Agent did not provide a narrative for the assessment nor did he consider the exception provided under the consolidation rule (discussed herein).

There is sufficient analysis and evidence to demonstrate of the complexity of the law and certainly a jury of 12 lay people would easily conclude that a return which requires 213 hours to assembly and prepare, which is done by a lay person who has no special tax training or education, and particularly in foreign tax, might not have a mistake in the return preparation or omit a required form, yet not subject the taxpayer to a $30,000 penalty. This would be true if the taxable income and tax was audited and found to be correct, yet a clerical error or mistake in interpreting the law which omitted, under the circumstances and with all due respect, an insignificant form. There is sufficient evidence to support a finding that the taxpayer researched the law, made a determination that the income of the foreign corporation was income which should be included and was included in the Barringer Financial return, and then filed to attach a correct.

It is inconceivable that twelve of the taxpayers peers would agree with the Internal Revenue Service's assessment of a $30,000 penalty against a taxpayer who correctly reported and paid his tax, yet left out a form. A jury of lay persons, not tax professionals, will fully understand how difficult the tax code is and appreciate that any member of that jury could be the next called to task for reporting and paying their correct share of tax yet inadvertently omitting a form resulting in a $30,000 in penalties.

I trust the Hearing Officer will consider all the foregoing taxpayer's responses in regard to the abatement of the penalty and make the determination that either: (i) the 5471 was not required in each year, or (ii) "reasonable cause" exists to abate the penalty, and that the penalty be abated.

Sincerely,

[signature]

cc: Sam Congdon

EDG039.LTR

and/or information apply. Do not duplicate information if the filer is described in more than one filing category. However, complete all schedules that apply. For example, if you are the sole owner of a CFC that is also a foreign personal holding company (i.e., you are described in Categories (1), (4), and (5)), you would complete all four pages of Form 5471 and separate Schedules J, M, and N.

Complete a separate Form 5471 and the applicable schedules for each foreign corporation. Be sure to complete Item B (at the top of page 1 of the form) to indicate the category or categories that describe the filer. If more than one category applies, check all boxes that apply.

If you are filing Form 5471 and applicable schedules for another person who has the same filing requirements, be sure to complete Item D at the top of page 1 of the form. Before completing Item D, read the specific instructions on page 4.

### Categories of Filers

**Category (1) filer.**—This includes a U.S. citizen or resident who is an officer, director, or 10% shareholder of a foreign personal holding company.

A 10% shareholder is any individual who owns, directly or indirectly (within the meaning of section 554), 10% or more in value of the outstanding stock of the foreign personal holding company.

See section 552 for the definition of a foreign personal holding company.

**Category (2) filer.**—This includes a U.S. citizen or resident who is an officer or director of a foreign corporation in which, since the last time Form 5471 was filed, a U.S. person has acquired (in one or more transactions): (a) stock of the foreign corporation that gives that person ownership of 5% or more in value of the outstanding stock of the foreign corporation, or (b) an additional 5% or more in value of the outstanding stock. See Schedule O, Examples of Category (2) Filers, on page 14.

For purposes of Category (2), a U.S. person is:

1. A citizen or resident of the United States,
2. A domestic partnership,
3. A domestic corporation, and
4. An estate or trust that is not a foreign estate or trust defined in section 7701(a)(31).

See Regulations section 1.6046-1(f)(3) for exceptions pertaining to corporations organized under the laws of certain possessions of the United States.

A U.S. person has acquired stock in a foreign corporation when that person has an unqualified right to receive the stock, even though the stock is not actually issued. See Regulations section 1.6046-1(f)(1) for more details.

(Continued on page 3)

## Filing Requirements For Categories of Filers

| Required Information | Category of Filer | | | | |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |
| The identifying information on page 1 (the information above Schedule A)—see Specific Instructions | ✓ | ✓ | ✓ | ✓ | ✓ |
| Schedule A, Part I | ✓ | | ✓ | ✓ | |
| Schedule A, Part II | ✓ | | | | |
| Schedule B | ✓ | | ✓ | ✓ | |
| Schedules C, E, and F | | | | ✓ | ✓ |
| Schedule H | | | | ✓ | ✓ |
| Schedule I | | | | ✓ | ✓ |
| Separate Schedule J | | | | ✓ | ✓ |
| Separate Schedule M | | | | ✓ | |
| Separate Schedule N | ✓ | | | | |
| Separate Schedule O, Part I | | ✓ | | | |
| Separate Schedule O, Part II | | | ✓ | | |

### Additional Filing Requirements

Category (3) filers must attach a statement showing the amount and type of any indebtedness of the foreign corporation to the related persons described in Regulations section 1.6046-1(b)(11). These filers must also attach a statement showing the name, address, identifying number, and number of shares subscribed to by each subscriber to the foreign corporation's stock.

Taxpayers are not required to file the information checked above for a foreign corporation that has elected (under section 953(d)) to be treated as a domestic corporation and has filed a U.S. income tax return for its tax year under that provision.

**Foreign Sales Corporations (FSCs).**—Category (2) and (3) filers who are shareholders, officers, and directors of a FSC (as defined in section 922) do not have to file Form 5471 and separate Schedule O to report the organization of a FSC. However, any subsequent reorganization, transfer, acquisition, or disposition of stock of the FSC must be reported.

Category (5) shareholders of a FSC are not subject to the subpart F rules for:
- Exempt foreign trade income;
- Deductions that are apportioned or allocated to exempt foreign trade income;
- Nonexempt foreign trade income (other than section 923(a)(2) nonexempt income, within the meaning of section 927(d)(6));
- Any deductions that are apportioned or allocated to the nonexempt foreign trade income described above.

Shareholders of a FSC are subject to the subpart F rules for all other types of FSC income (including section 923(a)(2) nonexempt income (within the meaning of section 927(d)(6)), investment income and carrying charges (as defined in sections 927(c) and (d)(1)), and all other FSC income that is not foreign trade income or investment income or carrying charges). However, Category (5) shareholders of a FSC are not required to file a Form 5471 if the FSC has filed a Form 1120-FSC. See Regulations section 1.921-1T(b)(2), Q&A 3.

EXHIBIT "___A___"   Page 2

## Section F—Additional Information

**Item (b).** List the date of any reorganization of the foreign corporation that occurred during the last 4 years while any U.S. person held 10% or more in value or vote (directly or indirectly) of the corporation's stock. If there is more than one such date, use the most recent date. However, do not enter a date for which information was reported in Schedule E. Instead, enter the date (if any) of any reorganization prior to that date (if it is within the last 4 years).

**Example for Item (c).** Mr. Lyons, a U.S. person, acquires a 10% ownership in foreign corporation F. F is the 100% owner of two foreign corporations, FI and FJ. F is also a 50% owner of foreign corporation FK. In addition, F is 90% owned by foreign corporation W. Mr. Lyons does not own any of the stock of corporation W.

Mr. Lyons completes and files Form 5471 and Schedule O for the corporations in which he is a 10% or more shareholder. Mr. Lyons is also required to submit a chart if the foreign corporation is a member of a chain of corporations, and to indicate if he is a 10% or more shareholder in any of those corporations.

Mr. Lyons would prepare a list showing the corporations as follows:
- Corporation W
- Corporation F
- Corporation FI
- Corporation FJ
- Corporation FK

Then Mr. Lyons is required to indicate that he is a 10% or more shareholder in corporations F, FI, and FJ.

---

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form and related schedules will vary depending on individual circumstances. The estimated burden for individual taxpayers filing this form is approved under OMB control number 1545-0074 and is included in the estimates shown in the instructions for their individual income tax return. The estimated burden for all other taxpayers who file this form is shown below.

| Form | Recordkeeping | Learning about the law or the form | Preparing and sending the form to the IRS |
|---|---|---|---|
| 5471 | 82 hr., 45 min. | 16 hr., 14 min. | 24 hr., 17 min. |
| Sch. J (5471) | 3 hr., 49 min. | 1 hr., 29 min. | 1 hr., 37 min. |
| Sch. M (5471) | 26 hr., 33 min. | 6 min. | 32 min. |
| Sch. O (5471) | 10 hr., 45 min. | 24 min. | 35 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making this form and related schedules simpler, we would be happy to hear from you. See the instructions for the tax return with which this form is filed.

EXHIBIT "_B_"

# AFFIDAVIT OF SAMUEL CONGDON

BEFORE ME, the undersigned notary, on this day, personally appeared Samuel Congdon, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

1. "My name is Samuel Congdon. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I was the president of the Equity Development Group.("EDG") a foreign corporation. I am the president of Delmar Consulting, Inc., general partner of Barringer Financial Partnership ("Barringer"). Barringer owned 100% of the outstanding shares of EDG.

3. In regard to EDG, I was the person responsible for preparing and filing the tax returns. I do have an undergraduate degree in economics. I am not an attorney, certified public accountant, or tax advisor. I have not taken any income tax courses nor am I trained in federal income tax issues. I am not sophisticated in federal tax laws and am not a tax expert. Nevertheless, I did prepare the income tax returns for EDG and the Report of Foreign Bank Account.

4. When preparing the 5471s for EDG, I carefully read the instructions to the 5471. Based upon my understanding of the law all the net income of EDG was to be included in Barringer since Barringer owned 100% of the stock of EDG. Therefore, the general ledger and financial statements of Barringer included all the assets, liabilities, income, and expenses of EDG. Thus all of EDG's bank accounts were included in the general ledger of Barringer. I spend a considerable number of hours, probably in excess of 200 hours per year in the accounting/bookkeeping of EDG and preparation of the 5471 and Report of Foreign Bank Account.

5. For the years in question, I had Mr. Lyle J. Mortensen, CPA, 1340 South Main Street, Suite 190, Grapevine, Texas, 76051, prepare Barringer's and my personal return. I provided Mr. Mortensen copies of my books (maintained at that time on Peachtree) which included EDG's transactions. Mr. Mortensen represented himself as knowledgeable in the foreign tax area, did not voice any objection to my treatment, and therefore I had no reason to believe my treatment was incorrect.

6. Nevertheless, to error on the "safe side", I decided to file the 5471 anyway and include only the basic information on the form since all of EDG's financial information was included in Barringer's return. These area of the law is very complicated and based upon my understanding of the law, this was the correct method.

7. Along with the 5471s, I filed the Report of Foreign Bank Account disclosure form each year in which EDG had a foreign bank account. Those were examined by Mr. Hoagland and determined to be properly filed.

8. During the course of the examination by Mr. Hoagland, Barringer, Delmar Consulting, Inc., and my personal return were audited, and "No Changed". Mr. Hoagland also inspected the 5471 of EDG and requested amended returns. He would not inform me or my representative, Mr. A. James Lynn, what, if anything, was incomplete with the return. I immediately requested Mr. Lynn to prepare amended returns.

10. All the Schedule M information was included in the accounting books of Barriner and in Barringer's U.S. income tax return.

11. The assessment of a $30,000 penalty works a burdensome and unreasonable financial hardship upon me. It is unreasonable for an honest mistake made for failing to provide data in an information return, when the information was provided and properly accounting for in the entity

which paid the tax."

_____
Samuel Congdon

SWORN TO and SUBSCRIBED before me by Samuel Congdon on June 23, 2008.

_____
Notary Public in and for the State of Texas



MARIANNE Y. VINES
MY COMMISSION EXPIRES
April 11, 2011

EDG02.LIT.WPD

AFFIDAVIT OF SAMUEL CONGDON

Page 3 of 3